IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NATALIE ROBBINS-FOSTER,** | : | |
| Plaintiff, | : | Case No. 2:08-CV-896 |
| v. | : | Judge Holschuh |
| **STATE OF OHIO DEPARTMENT OF TAXATION,** | : | Magistrate Judge Abel |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Natalie Robbins-Foster filed suit against her former employer, the State of Ohio Department of Taxation, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  This matter is currently before the Court on Defendant's motion for summary judgment.  (Doc. 26).  For the reasons stated below, that motion is granted.

**I.     Background and Procedural History**

The facts of this case are largely undisputed.  Robbins-Foster, who is African-American, worked at the State of Ohio Department of Taxation ("ODT") as an intermittent employee for approximately 10 years.  She was called to work during the busy tax season, usually from February through May of each year.  She held the position of Clerk 1 in the Process and Extraction Division ("Division"), opening and sorting mail, reviewing tax forms to ensure that they were fully completed, and forwarding them to the next department.  (Pl. Dep. at 22).  Supervisors in the Division included Jamie Wilson, Vicky Bryant, Lavonia Warner, Ronette Smith, Becky Smith, and June McQuade.

Each year, the Division's managers determined how many intermittent employees would be needed for that tax season. Clerical supervisors would then identify which intermittent employees they wanted working under their supervision. These individuals were then recalled with an offer and a start date. (Wilson Aff. ¶¶ 7-8). Robbins-Foster was recalled each year from 2000 through 2009. On two occasions, she was also asked to work on special projects that lasted two to three months during other times of the year. (Id. at ¶ 13). At the end of each tax season, and at the end of each special project, she was furloughed until the next time she was needed. When she was not working at ODT, she collected unemployment benefits. As an unclassified, intermittent employee, she was not a member of a collective bargaining unit.

Robbins-Foster wanted a permanent position with ODT as a clerk or data processor. A person desiring a classified civil service appointment with ODT is required to take a civil service examination through the Ohio Department of Administrative Services ("ODAS") for each position for which she wants to be considered. If the applicant passes the exam, she is placed on a list of eligible candidates for that particular position for a period of one year. Robbins-Foster took the civil service examination for several positions. In March of 2006, Robbins-Foster scored 85 on the Data Processor 1 examination. In February of 2007, she scored 85.09 on the Clerk 2 examination. In each case, ODAS notified her that she had passed these examinations and her name would be placed on the list of eligible candidates for a period of one year. (Ex. D to Pl. Dep.).

When ODT has a permanent position available, it is filled in one of two ways. ODT has a collective bargaining agreement with the Ohio Civil Service Employees Association ("OCSEA"). If the open position is part of the collective bargaining unit, the position must first be made available

to members of the bargaining unit. If no bargaining unit employee is hired for the position, or if the position is not part of a collective bargaining unit, ODT contacts ODAS for a "certification list," identifying the top ten candidates for that open position.[1] ODT then notifies those ten individuals that they are being considered for an appointment. By law, ODT may interview and hire only those applicants whose names appear on that "certification list." See Ohio Revised Code Chapter 124; Ohio Administrative Code §123:1-17-02 (establishing procedures for appointing state employees).

Nevertheless, Robbins-Foster testified that it was her understanding that once she passed the civil service examinations for certain positions and her name was placed on the list of eligible candidates, she was free to apply directly for positions posted internally at ODT, regardless of whether they were bargaining unit positions. She further testified that she believed that she would be considered for any positions for which she applied. (Pl. Dep. at 94). In accordance with this belief, Robbins-Foster submitted applications for several positions at ODT, but was never called for an interview. It is undisputed that many of the positions she applied for were available only to bargaining unit members. With respect to the other positions, it is undisputed that her name was not included on ODAS's "certification lists." (Exs. G-R, Y to Mot. Summ. J.).

Robbins-Foster filed a charge of race discrimination and retaliation with the Ohio Civil Rights Commission ("OCRC") on December 18, 2007. (Ex. S to Mot. Summ. J.). She was called back to work as an intermittent employee in February of 2008 and furloughed in May of 2008. In June of 2008, she received a letter from the Equal Employment Opportunity Commission ("EEOC") dismissing her charges and noting that it appeared that the reason she had not been hired for a

---

[1] Applicants are ranked based on their test scores on the civil service examinations. Applicants who have served in the military are given a weighted score. Because these tests are administered on a rolling basis, an applicant's ranking fluctuates over time.

3

permanent position was because her name did not appear as a top-ten candidate on any of the "certification lists" submitted to ODT by ODAS. (Ex. T to Pl. Dep.). In September of 2008, Robbins-Foster filed suit alleging discrimination on the basis of age and race, and alleging that ODT had retaliated against her for engaging in protected activity.

Robbins-Foster was not recalled to work on special projects in August or October of 2008. Nor was she called to return to work in February of 2009. According to Jamie Wilson, because ODT had implemented a new online tax filing system and obtained two new machines to complete the jobs many of the intermittent employees had previously performed, the need for intermittent clerks dropped considerably since 2005. In 2009, the area where Robbins-Foster worked hired only about three intermittent employees. (Wilson Aff. ¶¶ 4-5, 10).

On March 25, 2009, Robbins-Foster filed an additional charge of retaliation with the OCRC. (Ex. U to Mot. Summ. J.). Thereafter, on April 29, 2009, Robbins-Foster was called to return to work, but worked only 11 days before being furloughed again. On August 3, 2009, she filed an Amended Complaint, dropping the claim of age discrimination. ODT has now moved for summary judgment on the remaining claims of race discrimination and retaliation.

## II.     Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001).  Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

5

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." <u>Kendall v. Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir. 1984). <u>See also</u> <u>Anderson</u>, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. <u>See also</u> <u>Leary</u>, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." <u>Hall v. Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is

6

insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### III. Discussion

#### A. Race Discrimination

Robbins-Foster first alleges that ODT engaged in race discrimination in violation of Title VII. Her Amended Complaint asserts that ODT's conduct "amounts to disparate treatment racial discrimination." (Am. Compl. ¶ 14). She maintains that she was treated less favorably than white applicants, many with little or no experience. Title VII makes it unlawful for employers to "fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Discrimination claims brought under Title VII are classified either as "single motive" claims, where the plaintiff alleges that an illegitimate reason motivated the employer's decision, or "mixed motive" claims, where the plaintiff alleges that both legitimate and illegitimate reasons motivated the employer's decision. See White v. Baxter Healthcare Corp., 533 F.3d 381, 396 (6th Cir. 2008). Mixed motive claims are based on 42 U.S.C. § 2000e-2(m), which provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color,

7

religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."[2]

In this case, despite any mention of a mixed motive theory in her Amended Complaint, Robbins-Foster makes it clear in her memorandum in opposition to the motion for summary judgment that she is asserting a mixed motive claim. She impliedly acknowledges that ODT may have had legitimate reasons for not hiring her for the permanent positions for which she applied. Namely, she was not eligible for those positions either because she was not a member of the collective bargaining unit or because her name was not included on the ODAS "certification list" of the top ten candidates. She argues, however, that a reasonable jury could find that her race also played a part in ODT's decision not to hire her.

In order to survive summary judgment on a mixed motive claim, a plaintiff "need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was *a* motivating factor for the defendant's adverse employment action." White, 533 F.3d at 400 (emphasis in original) (citation and internal quotation marks omitted).[3] The burden on the plaintiff is "not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim." Id.

ODT argues that Robbins-Foster has not produced sufficient evidence from which a

---

[2] If the employer in a mixed motive case demonstrates that it would have taken the same action in the absence of the impermissible motivating factor, the plaintiff is limited to declaratory and injunctive relief, attorney fees and costs. See 42 U.S.C. § 2000e-5(g)(2)(B).

[3] In White, the Sixth Circuit held that mixed motive claims based on circumstantial evidence are not subject to the burden-shifting analysis set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See 533 F.3d at 400.

8

reasonable jury could find that race played any part whatsoever in the decision not to hire her. The Court agrees. In support of her claim of race discrimination, Robbins-Foster notes only that on one occasion Becky, a coworker, told a racist joke. Robbins-Foster admitted, however, that Becky had no decision-making authority with respect to hiring decisions. (Pl. Dep. at 109-11). Moreover, although Robbins-Foster alleges that ODT hired many white applicants who had little or no experience, she admits that she does not know any of their exam scores. (Id. at 103). Exam scores, rather than relevant experience, dictated who was included on the "certification lists," and there is simply no evidence that Robbins-Foster had higher test scores than any of the white applicants who were hired.

Quite tellingly, in her answers to interrogatories, Robbins-Foster stated that she "does not feel that she was wrongfully denied because of race," and she admitted in her deposition that she still felt that way. (Id. at 34; Ex. C to Mot. Summ. J., Question 10). She explained that she included a claim of race discrimination only because when she filed her charge of discrimination with the EEOC, she was told that "race had to be like a part of it." (Pl. Dep. at 35). Based on the evidence presented, no reasonable jury could find that race was a motivating factor in ODT's decision not to hire Robbins-Foster for any of the positions for which she applied. ODT is therefore entitled to summary judgment on this claim.

**B.     Retaliation**

Robbins-Foster also alleges that "Defendant's failure to recall plaintiff to work after plaintiff filed a charge with the OCRC/EEOC amounts to retaliatory conduct in derogation of Title VII." (Am. Compl. ¶ 18). See 42 U.S.C. § 2000e-3(a) (prohibiting an employer from discriminating against employees or applicants because they have opposed discriminatory employment practices).

9

She alleges that after she filed her charge of discrimination with the OCRC/EEOC, ODT did not recall her to work on special projects in August or October of 2008, and did not recall her to work in February of 2009. Although she was called to return to work in late April of 2009, she worked only 11 days before being furloughed again.

Where, as here, a plaintiff has no direct evidence of retaliation, the plaintiff can withstand a motion for summary judgment by presenting circumstantial evidence from which a jury may infer a retaliatory motive.[4] In such cases, the burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), applies. See Upshaw v. Ford Motor Co., 576 F.3d 576, 587-88 (6th Cir. 2009). Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing that "(1) she engaged in Title VII-protected activity; (2) [defendant] knew that she engaged in the protected activity; (3) [defendant] subsequently took an adverse employment action against [her]; and (4) the adverse action was causally connected to the protected activity." Id. at 588 (quoting Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009)).

If the plaintiff is successful in establishing a prima facie case, an inference of retaliation arises and the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. If the employer articulates such a reason, the presumption of retaliation drops away. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000). The plaintiff must then prove by a preponderance of the evidence that the reason offered was pretextual.

---

[4] Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). A facially discriminatory employment policy or an express statement by a decision-maker of a desire to terminate employees because they belong to a protected class would constitute direct evidence of discrimination. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the adverse employment action; or (3) the proffered reason was insufficient to motivate the adverse employment action. See Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994); Peters v. Lincoln Elec. Co., 285 F.3d 456, 471-72 (6th Cir. 2002).

ODT argues that summary judgment is appropriate because Robbins-Foster cannot establish a prima facie case of retaliation. ODT argues that Robbins-Foster cannot show the requisite causal connection between the protected activity and ODT's failure to call her to work on special projects in August and October of 2008, or ODT's failure to recall her for intermittent work in February of 2009.[5] The Court agrees.

Robbins-Foster filed her first charge of discrimination, concerning ODT's failure to hire her for a permanent position, with the OCRC in December of 2007. (Ex. S to Mot. Summ. J.). She stated in her deposition that although she told coworker Gina Harris that she had filed the charge, she was unsure if she told any of her supervisors. (Pl. Dep. at 141). Robbins-Foster testified, however, that as a general rule, she did not "discuss [her] personal business with supervisors." (Id. at 162).

---

[5] In addition to arguing that ODT retaliated against her for engaging in protected activity, Robbins-Foster also alleges that ODT retaliated against her because she was friends with Gina Harris, who got into a dispute with Jamie Wilson, the Division manager. Robbins-Foster testified that she believed that Wilson's friendship with Amanda Bushey, who worked in human resources, influenced Bushey's view of Robbins-Foster and subsequent hiring decisions. (Pl. Dep. at 36-47, 73-75). However, as ODT points out, because this employee dispute has nothing to do with activity protected under Title VII, it cannot form the basis for a Title VII retaliation claim.

Gregory Siegfried, an attorney at ODT, first received notice of the charge of discrimination on February 13, 2008. Since the charge concerned general allegations of a failure to hire, there was no need for him to consult the Division managers, and he did not do so. Robbins-Foster filed the instant lawsuit on September 23, 2008, but ODT was not served until February 4, 2009. Siegfried forwarded that complaint to the Ohio Attorney General's Office, again without consulting the Division. (Siegfried Aff. ¶¶ 1-3).

On March 29, 2009, Robbins-Foster filed her second charge of discrimination with the OCRC. This time, she alleged that her supervisors had retaliated against her by failing to recall her to work because she had filed an earlier charge of discrimination. (Ex. U to Mot. Summ. J.). Because this charge specifically implicated the Division's management personnel, Siegfried needed to consult with those individuals before responding to the charge. At that time, he informed them of both charges and the complaint. He responded to the second charge on May 12, 2009. (Siegfried Aff. ¶ 4).

Jamie Wilson, the Division manager, submitted an affidavit stating that she did not learn that Robbins-Foster had filed a charge of discrimination with the OCRC or the instant lawsuit until sometime after March of 2009. (Wilson Aff. ¶ 17). Likewise, Division supervisors Vicky Bryant, Becky Smith, Lavonia Warner and June McQuade submitted affidavits stating that, when they decided who to recall for special projects in August and October of 2008, and which intermittent employees to recall for the tax season in February of 2009, they did not know that Robbins-Foster had filed charges of discrimination or the instant lawsuit. (Bryant Aff. ¶¶ 4-5; B. Smith Aff. ¶¶ 4-5; Warner Aff. ¶¶ 4-5; McQuade Aff. ¶¶ 4-5).

Robbins-Foster has submitted no evidence to the contrary. She did testify that when she first returned to work in late April or early May of 2009, Ronette Smith told her that the supervisors had received an email telling them not to talk to Robbins-Foster about the lawsuit, but to refer her to human resources. Plaintiff did not see this email or did not know when it was sent. It has not been made part of the record. (Pl. Dep. at 142-44). Assuming *arguendo* that this evidence is admissible, it is not inconsistent with the supervisors' statements that they did not know that Robbins-Foster had engaged in protected activity until some time after February of 2009.

With respect to Robbins-Foster's claim that ODT retaliated against her by failing to recall her for special projects in August and October of 2008, she has failed to establish a prima facie case. Because none of the relevant decision-makers knew at that time that Robbins-Foster had engaged in protected activity, she cannot establish the requisite causal connection. ODT is, therefore, entitled to summary judgment on this portion of the retaliation claim.

Robbins-Foster also alleges that ODT retaliated against her by failing to recall her at the beginning of the 2009 tax season. She testified that, normally, she received a call in January and was given a start date in January or February. (Pl. Dep. at 155). Again, there is simply no evidence that any of the decision-makers were aware in January or February of 2009 that Robbins-Foster had filed a charge of discrimination or the instant lawsuit. Therefore, Robbins-Foster cannot establish the requisite causal connection.

Even if Robbins-Foster could establish a prima facie case with respect to this portion of her retaliation claim, ODT has articulated a legitimate, non-retaliatory reason for not recalling her in February of 2009. Because of technological advances, the need for intermittent clerks had dropped

considerably. (Wilson Aff. ¶¶ 4,5, 10). Moreover, Robbins-Foster was, in fact, recalled to work in April and May of 2009, *after* her supervisors learned of her protected activity.  This fact makes it much more difficult for her to prove that the proffered reason was pretextual.  There being no genuine issue of material fact, ODT is therefore entitled to summary judgment on this portion of Robbins-Foster's retaliation claim as well.

**IV.     Conclusion**

Based on the evidence presented, no reasonable jury could find that ODT discriminated against Plaintiff on the basis of race, or that ODT retaliated against her for engaging in protected activity. The Court therefore **GRANTS** Defendant ODT's motion for summary judgment (Doc. 26). The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**


Date: August 13, 2010                              **/s/ John D. Holschuh**
                                                   John D. Holschuh, Judge
                                                   United States District Court